CELLULAR SALES, INC. and
John Webb, Appellees,

v.

Rick MACKAY, d/b/a Cellular
Sales North, Appellant.

No. 90–2473.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1991.

Decided Aug. 13, 1991.

---

8. *See supra* note 7.

484

Steve Leben, argued (Thomas McGraw, III, on brief), Overland Park, Kan., for appellant.

Gary Long, Kansas City, Kan., for appellees.

Before WOLLMAN, Circuit Judge, and ROSS and HENLEY, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Plaintiffs Cellular Sales, Inc. and John Webb filed this action charging that defendant Rick Mackay, by doing business as Cellular Sales North, is misappropriating

plaintiffs' trade name. The district court agreed and issued a preliminary injunction enjoining Mackay from using the name "Cellular Sales" in the future. Because we conclude that the name "Cellular Sales" is generic in nature and therefore not entitled to trade name protection, we reverse the decision of the district court.

## I.

In October 1986, plaintiff John Webb became an agent for a company named Cellular One, a regional cellular telephone company that is licensed by the Federal Communications Commission to provide cellular telephone services. In May 1987, Mackay agreed to work with Webb as a salesman and installer of cellular phones. Both Webb and Mackay had salesmen working for them and each earned commissions on sales. Mackay alleges that the two operated in a joint venture, while Webb alleges that he operated as a sole proprietorship until February 1989 when he formed the corporation Cellular Sales, Inc., in which he was the only shareholder and officer. Webb assigned right to the name "Cellular Sales" to the corporation.

On July 23, 1987, Webb filed a "Registration of Fictitious Name" with the Missouri Secretary of State for the name, "Cellular Sales." Missouri law requires the registration of any fictitious name under which someone is doing business in Missouri, but the law does not provide for any trade name protection as a result of such filings. Mo.Rev.Stat. §§ 417.200–417.230.

In mid–1989, Mackay decided that there was a potential for development of cellular phone sales in North Kansas City, but Webb was not interested in opening a north office. In August 1989, Mackay eventually leased a north office location on his own. He obtained a phone for that location and immediately began using the name, "Cellular Sales North." On October 10, 1990, an advertisement was placed in the Kansas City Times under the name "Cellular Sales," listing telephone numbers for both the north office and the original office.

In November 1989, Mackay began making arrangements to obtain his own agent's contract with Cellular One, the regional cellular air carrier. Mackay eventually obtained his own agents's contract with Cellular One effective December 1, 1989. On December 2, 1989, Webb and Mackay agreed to end their business relationship. Thereafter, Webb filed suit against Mackay alleging trade name infringement.

The district court found that the name, "Cellular Sales," has a unique significance and that the use of the name "Cellular Sales North" would likely mislead some members of the public into believing that Mackay was operating a branch or franchised office affiliated with Webb. The district court found that Mackay had not proven his joint venture theory and concluded that "defendant has a likelihood of success of no more than 40% or 45% in establishing equal rights to the name 'Cellular Sales.'" The court also found that there was a threat of irreparable harm because confusion of the name could cause lost business which would be extraordinarily difficult to ascertain and evaluate. The lower court entered a preliminary injunction against any future use by Mackay of the business name "Cellular Sales" and Mackay was instructed to begin use of a clarifying name, such as "Cellular North," in response to incoming calls.

## II.

Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) whether the threatened injury outweighs damage to the opposing party; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc).

In determining whether a trade name is entitled to protection, it must first be classified into one of four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). A generic term is the name of a particular type, kind, ge-

nus or class of goods in which an individual article or service is but a member. *Id.* It is well established that generic terms are not entitled to trademark protection because such words are in "the public domain and available for all to use," *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.,* 634 F.Supp. 990, 997 (W.D.Mo.1986), and because such terms "describ[e] not only a particular product or service but also a type or kind of product or service." *First Fed. Sav. & Loan Ass'n of Council Bluffs v. First Fed. Sav. & Loan Ass'n of Lincoln,* 929 F.2d 382, 383 (8th Cir.1991).

■ The standard of proof that must be met by the plaintiff in seeking injunctive relief varies depending upon the type of mark at issue. If the mark is the strongest possible mark—an arbitrary or fanciful mark—it is "entitled to maximum legal protection and do[es] not require proof of secondary meaning." *Hallmark Cards, supra,* 634 F.Supp. at 998. If the mark is the weakest protectable mark—a descriptive trademark or trade name—the plaintiff must prove that the mark has an accepted "secondary meaning."

■ Secondary meaning refers to a mark that "has become distinctive of the applicant's goods in commerce, i.e., to a mark that consumers associate with a producer or distributor rather than with the product itself." *Best Buy Warehouse v. Best Buy Co.,* 920 F.2d 536, 537 (8th Cir. 1990) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 2893, 115 L.Ed.2d 1058 (1991). As evidence that a mark has acquired secondary meaning, courts will accept direct evidence of customer confusion, or, because direct evidence may be difficult to find, evidence from consumer surveys showing likelihood of confusion. *Id.*

■ "Cellular Sales" falls within the definition of a generic trade name. The terms "cellular" and "sales" individually are generic in nature. Moreover, even when combined, "cellular sales" does not describe a *particular* product, but instead describes the sale of cellular telephone equipment, which is a genus or class of products, and in no way describes the particular cellular

phones sold by Webb. In fact, the record shows that there are eight unrelated firms, in addition to Cellular Sales and Cellular Sales North, listed in the Kansas City phone book that use the term "cellular" in their names. Further, Webb himself has listed Cellular Installation, Cellular Rental, Cellular Repair and Cellular Service in the white pages of the phone book, all of which are answered at Webb's phone number.

In *First Federal, supra,* 929 F.2d at 384, this court concluded that "First Federal" is not a generic phrase, reasoning that "First Federal" is not the same as savings and loan institutions generally. The court found that "First Federal" does not refer generically to banks and savings and loans as a group, but instead describes a "first-rate (or first in time in the area), federally chartered savings and loan." *Id.*

In contrast, there are a number of companies that sell cellular telephone equipment and access to a cellular telephone network; these companies are accurately described generically as "cellular sales" companies. The term "cellular sales" defines this category of companies selling cellular telephone equipment.

■ Even if we were to find that "Cellular Sales" was entitled to some trade name protection, Webb has failed to carry his burden of establishing evidence of a secondary meaning acquired by "Cellular Sales." The record shows that the only evidence presented by Webb of the secondary meaning is his own testimony and that of his employees that the public has associated "Cellular Sales" exclusively with "John Webb." However, no survey or any other evidence has been shown to establish this connection. This court has held that "[m]ore is needed to establish the necessary consumer association than merely the self-serving testimony of the plaintiff that some of his customers were confused." *Co–Rect Prods., Inc. v. Marvy! Adv. Photography, Inc.,* 780 F.2d 1324, 1333 (8th Cir.1985). The evidence presented herein is insufficient to carry the burden of proof necessary to sustain a preliminary injunction.

Finally, Webb has failed to establish that he will suffer irreparable injury absent the issuance of the preliminary injunction. Webb concedes that there were no sales records that would indicate that Mackay had caused any loss of sales to plaintiff's business. One of Webb's employees stated that although there had been occasions when customers had mistaken the two businesses, most of Webb's customers had been loyal enough to stay with him.

Another employee stated that he was aware of one customer whose business had been lost to Mackay; however, he admitted the reason was because Mackay offered a lower price, not because of any confusion. Webb's testimony about confusion between his business and Mackay's related to suppliers, not to customers. Webb said he knew of two other customers he had lost to Mackay, one of whom was Mackay's mother. It cannot be said that Webb lost Mackay's mother's business as a result of trade name confusion.

It is true that a plaintiff may elect to prove that his losses are incapable of calculation, though still significant and therefore irreparable. However, Webb has made no such showing here. Webb offered no evidence that his losses were not subject to calculation. Further, Webb admitted that his business is growing, although he contends that the growth is less than it might otherwise be.

We conclude that the district court erred in issuing a preliminary injunction in the present case as the plaintiff has failed to establish that "Cellular Sales" is entitled to trade name protection or that he will suffer irreparable harm if the injunction is not rendered. Based on the foregoing, the judgment of the district court is reversed.