**DOOR SYSTEMS, INCORPORATED, Plaintiff–Appellant,**

v.

**PRO–LINE DOOR SYSTEMS, INCORPORATED, Defendant–Appellee.**

No. 95–3808.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1996.

Decided May 6, 1996.

George Bullwinkel (argued), Harold J. Fassnacht, Eric F. Greenberg, Bullwinkel Partners, Chicago, IL, James Maher, Chicago, IL, for Plaintiff–Appellant.

Todd S. Parkhurst, Gardner, Carton & Douglas, Chicago, IL, Thomas Bradley, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Chicago, IL, Marty J. Schwartz, Chicago, IL, Terry Sullivan, Nancy J. Nicol (argued), Judy Chessick, Rolling Meadows, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUMMINGS and WOOD, Circuit Judges.

POSNER, Chief Judge.

The complaint by Door Systems, Inc., in two counts (actually more, but the others have been abandoned), charged Pro–Line Door Systems, Inc. with infringing the plaintiff's registered trademark "Door Systems" in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114(1), and with false designation of origin in violation of section 43(a), 15 U.S.C. § 1125(a). The district court granted summary judgment for the defendant on both counts, holding with respect to the first that the term "door systems" is generic and therefore cannot be trademarked and with respect to the second that likelihood of confusion between the defendant's product and the plaintiff's was nil.

Both parties sell overhead garage doors together with the electrical device for opening and closing them remotely. Since 1980, the plaintiff has advertised (mainly in the yellow pages) and sold its garage doors and control devices under the trademark "Door Systems," which the Patent and Trademark Office accepted for registration in 1989. The defendant started in business in 1986, under the name "Pro–Line Door Systems, Inc." Four other sellers of automatic garage doors also began using the term "door systems" sometime after 1980. Door Systems sued all five in this lawsuit, settling with all but Pro–Line in consent decrees that bar those sellers from continuing to denote their brands by the term.

The function of the normal product trademark is to identify a brand, so that consumers who want to buy a particular brand of the product will know which brand it is when they are shopping for the product. Mumm's, the brand, is a trademarked brand

of champagne, the product. A generic term, in the jargon of trademark law, is a word that denotes the product rather than any of the brands of the product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *Henri's Food Products Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1305–06 (7th Cir.1987); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12.01[1] (3d ed.1995). If a generic word could be trademarked by the producer of one brand of the product denoted by the word, and thus (upon proof of likely confusion) barred to use by producers of competing brands, the producer who trademarked it would have a competitive advantage that bore no relation to relative efficiency. Competitors would have difficulty informing consumers that they *were* competitors, because they would be unable, without elaborate and possibly confusing paraphrase, to give the name of the product they were selling. If, for example, Romanoff could trademark the word "caviar," competing sellers of caviar would have to use terms such as "sturgeon eggs" or "sturgeon roe" to denote their product, and some consumers would think it was something different from caviar. The trademarking of generic terms would impose excessive costs of information on competitors and consumers and is therefore forbidden. *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992); *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986); *Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7–8 (1st Cir.1981).

One question presented by Pro–Line's defense is thus whether "door systems" is the name of the product—automatic garage doors, or remotely controlled garage doors, or remotely controlled doors of any type, or perhaps any system of noncontiguous parts for performing the function of a door (for example, a matching pair of screen door and regular door, or an integrated system of French doors for a patio or sunroom)—that subsumes the particular brands sold by the parties. This is a question of fact, *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir.1996); *Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir.

1993), but as with any question of fact can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about how the question should be answered.

More precisely, the question of genericness is one of linguistic usage, and can be approached by a variety of routes. One is the dictionary. If the term "door systems" appeared in a standard dictionary in lower case, this would be powerful evidence that the term was generic, because nouns and other nominatives listed in dictionaries, save for the occasional proper name, denote kinds rather than specific entities ("dog," not "Fido"). The term "door systems" does not appear in the dictionary. Its component words do, of course, but that in itself cannot count for much; otherwise it could be argued that "Seven–Up" is generic, which no one believes. (Well, almost no one—the argument that it is was made in *Seven–Up Co. v. Bubble Up Corp.*, 50 C.C.P.A. 1012, 312 F.2d 472, 474 (1963); the case was decided on other grounds.) But the fact that "door systems" is not in the dictionary cannot be the end of the analysis. No dictionary is complete or completely up to date, or tracks the language of the marketplace perfectly. A number of generic terms are not found in dictionaries. William M. Landes & Richard A. Posner, "Trademark Law: An Economic Perspective," 30 *J. Law & Econ.* 265, 296 (1987). Another place to look is the yellow pages, where business and trade names are subsumed under product designations. But again we do not find "door systems." The plaintiff's and defendant's yellow pages listings and ads appear under the heading "Door & Gate Operating Devices."

The fact that the parties' product is designated by a general term that is not the alleged generic term bears against Pro–Line's defense, because it shows that Pro–Line will not be rendered speechless, as it were, if forbidden to describe its product by the term "door systems." *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc., supra*, 781 F.2d at 609–10. Indeed, we have suggested two general designations, apart from "door systems" or the yellow pages' "Door & Gate Operating Devices," for what Pro–Line (along with

Door Systems) sells: "automatic garage doors" and "remotely controlled garage doors." Door Systems itself, for what it's worth, denotes its product in its advertising not as "door systems" but as "garage doors & door openers."

There was somewhat more evidence in *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934 (7th Cir.1986), admittedly a similar case and one on which Pro-Line naturally relies very heavily, that the term in issue there, "liquid controls," had become the name of the product, and so could not be appropriated to name a brand of the product. See also *Mil–Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153 (7th Cir.1996); *Blinded Veterans Ass'n v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1040–41 (D.C.Cir.1989); *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 909 (9th Cir.1995). More important, there was no suggestion in the *Liquid Controls* case of an alternative designation of the product to "liquid controls." Here there are several alternatives which appear to be, in fact, generic names for the product.

■ Granted, "door systems," like "liquid controls," is a good *description* of what the parties sell. But a descriptive term that is not the name of the product ("temperature feedback control" versus "thermostat") can be trademarked if it acquires secondary meaning, *Spraying Systems Co. v. Delavan, Inc., supra*, 975 F.2d at 392–93, that is, if the consuming public comes to associate it with the particular brand of the seller who wants to use it as its trademark. It is true that a descriptive term often, perhaps generally, can be used to denote the product, and thus to have a generic use. But that in itself, its capability of *becoming* generic, does not make it a generic term. If the product is usually called something else, as the product of the parties to this lawsuit is—the advertising in the record suggests that the most common names for it are simply "garage doors" and "garage doors and openers"— then appropriating a descriptive term which might be used generically will not impose heavy costs on competitors or consumers.

■ A trademark search conducted by Pro–Line revealed that at least a dozen firms (mainly but not only sellers of garage doors), in addition to the five garage-door sellers sued by Door Systems, denote their product by the term "door systems." If anything, one is surprised the number is no larger. The popularity of the word "system" in contemporary noun expressions ("weapon systems," "stereo systems," "alarm systems," and so forth) makes it plausible to suppose that "door system" might catch on as the standard term for remotely controlled or otherwise complex devices for performing the door function. Perhaps it has caught on already in the relevant submarkets. We do not mean to suggest that the evidence is wholly onesided in the plaintiff's favor. Nor can the plaintiff obtain any residual mileage from the registration of its trademark. The presumption of validity that federal registration confers (see 15 U.S.C. § 1115(a)) evaporates as soon as evidence of invalidity is presented. *Liquid Controls Corp. v. Liquid Control Corp., supra*, 802 F.2d at 938. Its only function is to incite such evidence, and when the function has been performed the presumption drops out of the case. Cf. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1037–39 (Fed.Cir.1992) (en banc). The presumption performed its function—Pro–Line presented evidence that the term "door systems" is generic, thus creating a conflict in evidence.

■ Summary judgment is not to be used to resolve evidentiary conflicts, but merely to identify their presence or absence. Fed.R.Civ.P. 56; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Before it can properly be granted, therefore, the court must have a very high degree of confidence that any disagreement over the facts is spurious. The heavy caseloads that press on federal district courts today, especially in the large metropolitan districts such as the Northern District of Illinois, from which this case comes to us, make it tempting to use summary judgment as an abbreviated form of trial. We have warned against yielding to the temptation. *Brotherhood Shipping Co. v. St. Paul Fire & Marine Ins. Co.*, 985 F.2d 323, 327 (7th Cir.

1993); see also *Wilson v. Williams,* 997 F.2d 348, 350 (7th Cir.1993).

We need not decide, however, whether the issue of the generic status of "door systems" could properly be resolved on summary judgment, given the record compiled in the pretrial proceedings. It is plain that Door Systems could not prevail on the first count even if we remanded for a trial on the issue of genericness. The reason has to do with the ground on which the district court dismissed the second count, which alleges that purchasers of Pro–Line's garage doors are likely to be misled by the use of the words "door systems" in its advertising into thinking they're buying from Door Systems. This charge is separable from the first because even if "door systems" is generic a competitor might use the term in its advertising or labeling in such a way as to mislead the consumer. *Liquid Controls Corp. v. Liquid Control Corp., supra,* 802 F.2d at 939–40. After all, the plaintiff's trade name is "Door Systems," whether or not the trade name can be used as a trademark identifying a brand; so the possibility cannot be dismissed out of hand that a competitor that used the same name might deceive consumers. This would be obvious if Pro–Line had changed its name to "Door Systems, Inc." and featured its new name prominently in its advertising for automatic garage doors.

But a glance at the parties' ads, which we reproduce in an appendix to this opinion, suffices here as in *Libman Co. v. Vining Industries, Inc.,* 69 F.3d 1360 (7th Cir.1995), to show that the district court was right to hold, on the defendant's motion for summary judgment, that there is no reasonable likelihood that any significant number of consumers could mistake the defendant for the plaintiff. Likelihood of confusion is a question of fact in this circuit, *Forum Corp. v. Forum, Ltd.,* 903 F.2d 434, 438 (7th Cir. 1990); *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1428 (7th Cir.1985); 3 McCarthy, *supra,* § 23.22[2][f], pp. 23–146 to 23–147, but like any fact can be determined at the summary judgment stage if not contestable. Remember that "door systems," even if it is not generic, is descriptive; and it is plain from the way in which it is used in Pro–Line's advertising that it is being used to describe the product that Pro–Line sells rather than to denote Door Systems, Inc. and by doing so suggest an affiliation or identity between the two sellers.

We acknowledge the pitfalls of basing a judgment of likelihood of confusion on a side-by-side comparison of the parties' advertisements. See *Libman Co. v. Vining Industries, Inc., supra,* 69 F.3d at 1362. Differences that are salient when the ads are laid side by side may become attenuated in recollection. But given the blandly descriptive character of the term "door systems" compared to the more vivid and individual "Pro–Line," we think it wholly unlikely that any significant number of consumers would be misled. And that is the test, *id.* at 1361–62; 3 McCarthy, *supra,* § 23.01[2], p. 23–9, so that the plaintiff's evidence that two consumers (out of how many thousands?) may have been misled cannot by itself be thought to create a contestable issue of likelihood of confusion even if the evidence, which is hearsay, is admissible and credible, as we doubt.

In the district court Pro–Line argued that the absence of evidence of likelihood of confusion was not only a ground for knocking out the second count but also an alternative ground for knocking out the first count. A trademark, even a registered one, is not a property right, like a copyright or a patent, but merely an identifier of source. Others can use the same mark to identify their product, provided there is no likelihood of confusion, 15 U.S.C. § 1114(1); 3 McCarthy, *supra,* § 23.01[1], which would impair the trademark's function as an identifier. The district court, having found that Door Systems' mark could not be trademarked at all, did not proceed to the alternative ground that there was no likelihood of confusion. Pro–Line could nevertheless have defended the district court's judgment on the alternative ground in this court. An appellee can defend the judgment appealed from on any nonwaived ground, even if the district court did not address it. *Massachusetts Mutual Life Ins. Co. v. Ludwig,* 426 U.S. 479, 481, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (per curiam); *Patz v. St. Paul Fire & Marine Ins. Co.,* 15 F.3d 699, 703 (7th Cir.1994);

*Cardoza v. CFTC,* 768 F.2d 1542, 1548 n. 4 (7th Cir.1985). And Pro–Line's failure to do so is not a waiver. An appellee is not required to advance every possible ground for affirmance; and should the case be remanded it can advance the additional grounds in the district court, provided they have not been waived in that court. *Smith v. Richert,* 35 F.3d 300, 305 (7th Cir.1994).

So if we remanded the case for further proceedings on the first count, because we were not satisfied that the district court should have granted summary judgment for the defendant on the ground that "door systems" is a generic term, Pro–Line would be free to advance as an alternative defense the unlikelihood of confusion and to point out that the finding of unlikelihood of confusion was the law of the case and should not be reexamined by the district court. The district court would grant judgment for the defendant, and we would affirm, for at argument Door Systems' lawyer conceded that the finding of unlikelihood of confusion on count two, if sustained, would equally bar any relief on count one. Since the outcome of a remand is foreordained, and the appellant cannot claim unfair surprise because the issue was explored at the argument and the appellant did not seek an opportunity for supplementary briefing (which would surely have been futile: the issue is open and shut), ordering a remand would be a waste of time.

AFFIRMED.

APPENDIX